# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JEANINE E. DEHAAN,**

        **Plaintiff,**

        v.                                                           Case No. 17-CV-1347

**NANCY A. BERRYHILL,**

        **Defendant.**

# DECISION AND ORDER

## PROCEDURAL HISTORY

Plaintiff Jeanine E. Dehaan alleges she has been disabled since March 4, 2013, due to lower back injury, spinal bifida, depression, Ehler-Danlos Syndrome, and asthma. (Tr. 168, 187.) In March 2013 she applied for supplemental security income. (Tr. 264-69.) After her application was denied initially (Tr. 168-86) and upon reconsideration (Tr. 187-207), a hearing was held before an administrative law judge (ALJ) on July 20, 2016 (Tr. 40-92). On November 8, 2016, the ALJ issued a written decision concluding Dehaan was not disabled. (Tr. 15-31.) The Appeals Council denied Dehaan's request for review on August 14, 2017. (Tr. 1-3.)

This action followed. All parties consented to the full jurisdiction of a magistrate judge (*see* ECF Nos. 5, 8) and the matter is now ready for resolution.

**ALJ'S DECISION**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. The ALJ found that Dehaan "has not engaged in substantial gainful activity since March 4, 2013, the amended alleged disability onset date[.]" (Tr. 17.)

The analysis then proceeds to the second step, which considers whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). "In order for an impairment to be considered severe at this step of the process, the impairment must significantly limit an individual's ability to perform basic work activities." *Moore v. Colvin*, 743 F.3d 118, 1121 (7th Cir. 2014). The ALJ concluded that Dehaan has the following severe impairments: "degenerative disc disease, Ehlers-Danlos syndrome, a depressive disorder, and an anxiety disorder[.]" (Tr. 17.)

At step three, the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 416.1526, 416.920(d) and 416.926) (called "the listings.") If the impairment or

2

impairments meets or medically equals the criteria of a listing and also meets the twelve month duration requirement, 20 C.F.R. § 416.909, the claimant is disabled. If the claimant's impairment or combination of impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. The ALJ found that Dehaan "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (Tr. 18.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the claimant's ability to perform both physical and mental work-related activities on a regular and continuing basis despite her impairments. *Moore*, 743 F.3d at 1121. In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1529, 416.929, SSR 96-4p. In other words, the RFC determination is a function by function assessment of the claimant's maximum work capability. *Elder v. Asture*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that Dehaan has the RFC

> to perform sedentary work as defined in 20 CFR 416.967(a) except she would have the following additional limitations. She could handle and finger no more than frequently. She could climb ramps and stairs no more than frequently; she could never climb ladders, ropes or scaffolds. She could stoop, kneel, crouch and crawl no more than occasionally. She could never work at unprotected heights nor around moving mechanical parts nor operate a motor vehicle in a work setting. The claimant must avoid concentrated exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat. With regard to understanding, remembering and carrying out instructions, she could

3

> perform no more than simple routine tasks. With regard to the use of judgment, she could only make simple work-related decisions. She could interact appropriately with supervisors no more than frequently and interact appropriately with coworkers and the public no more than occasionally. The claimant is limited to tolerating only occasional changes in a routine work setting. In addition to normal breaks, she would be off task less than ten percent of the time in an eight-hour workday.

(Tr. 20.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1526, 416.965. Dehaan's past relevant work was as a mail truck driver. (Tr. 29.) The ALJ concluded that Dehaan is unable to perform any past relevant work. (*Id.*)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. At this step the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Dehaan can perform. (Tr. 29.) In reaching that conclusion the ALJ relied on testimony from a vocational expert, who testified that a hypothetical individual of Dehaan's age, education, work experience, and RFC could perform the requirements of general office clerk, order filler, and mail clerk. (Tr. 30.) Finding that Dehaan could perform work in the national economy, the ALJ concluded that she is not disabled. (*Id.*)

## STANDARD OF REVIEW

The court's role in reviewing an ALJ's decision is limited. It does not look at the evidence anew and make an independent determination as to whether the claimant is disabled. Rather, the court must affirm the ALJ's decision if it is supported by substantial evidence. *Moore*, 743 F.3d at 1120. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1120-21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, it is possible that opposing conclusions both can be supported by substantial evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

It is not the Court's role to reweigh evidence or substitute its judgment for that of the ALJ. *Moore*, 743 F.3d at 1121. Rather, the court must determine whether the ALJ complied with his obligation to build an "accurate and logical bridge" between the evidence and his conclusion that is sufficient to enable a court to review the administrative findings. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). "This deference is lessened, however, where the ALJ's findings rest on an error of fact or logic." *Thomas*, 745 F.3d at 806. If the ALJ committed a material error of law the court cannot affirm the ALJ's decision regardless of whether it is supported by substantial evidence. *Beardsley*, 758 F.3d at 837; *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

**ANALYSIS**

Dehaan contends that the ALJ erred in four respects that warrant remanding the decision for further proceedings. First, Deehan contends that the ALJ's hypothetical question to the vocational expert was flawed because it failed to account for all of her mental limitations—specifically, her moderate difficulties in concentration, persistence, and pace. (ECF No. 13 at 8-17.) Second, she contends that the ALJ erred in his credibility determination. (*Id.* at 17-25.) Third, she contends that the ALJ erred in his RFC evaluation by including "frequent" as opposed to "occasional" handling and fingering. (*Id.* at 26-28.) Last, Dehaan contends that the ALJ erred in his evaluation of the medical opinion evidence. (*Id.* at 28-34.)

**I. The ALJ's Hypothetical Question Posed To The Vocational Expert**

Dehaan argues that the ALJ's findings at step five of the evaluation process are unsupported by substantial evidence because the ALJ failed to include moderate limitations in concentration, persistence, or pace in the hypothetical questions posed to the vocational expert. (*Id.* at 12.) In relevant part, the ALJ posed the following hypothetical to the vocational expert:

> And then mental limitations including ability to perform simple, routine tasks, making simple work-related decisions, interacting appropriately with supervisors on a frequent basis, interacting appropriately with co-workers and the general public on an occasional basis. And then limited to tolerating only occasional changes in a routine work setting. And then in addition to normal breaks, being off-task less than 10 percent of the time in an 8-hour workday.

(Tr. 83.)

In this circuit, "both the hypothetical posed to the [vocational expert] and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). "More specifically, the question must account for documented limitations of 'concentration, persistence or pace.'" *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (internal citations omitted). "Although it is not necessary that the ALJ use this precise terminology ('concentration, persistence and pace'), we will not assume that the [vocational expert] is apprised of such limitations unless [he] has independently reviewed the medical record." *Yurt*, 758 F.3d at 857.

At step three of the evaluation process and in determining the RFC, the ALJ found that Dehaan had moderate limitations in concentration, persistence, or pace. (Tr. 19, 27-28.) Nothing in the record suggests that the vocational expert reviewed Dehaan's medical history or heard testimony regarding her limitations in concentration, persistence, or pace. Thus, it is necessary that the ALJ's hypothetical question to the vocational expert adequately accommodated Dehaan's moderate limitations in concentration, persistence, or pace.

The Commissioner argues that the ALJ adequately captured the limitations in concentration, persistence, or pace by limiting Dehaan to simple, routine tasks, which "tracked the language of consultative examiner Jeffrey L. Polczinski, Psy. D., and state-

agency psychologists David L. Biscardi, Ph. D., and Darrell Synder, Ph. D." (ECF No. 17 at 5 (citing Tr. 20, 27-28, 182, 199, 532).) The Commissioner points out that the ALJ gave great weight to Dr. Polczinkski's opinion, which, in relevant part, opined that Dehaan: (1) was "capable of understanding at least simple directions put to her;" (2) had "memory, attention, and concentration abilities [that] would be adequate for routine tasks;" (3) "seems capable of relating appropriately to coworkers and supervisors;" and (4) "may have mild difficulties managing stress and/or change," but "routine levels would not be precluded." (Tr. 532; ECF No. 17 at 5.)

However, to the extent the ALJ's hypothetical limiting Dehaan to simple, routine tasks "tracked the language" of Dr. Polczinski, that language as used by Dr. Polczinski was not intended to capture limitations in concentration, persistence, or pace. Indeed, the ALJ specifically found that Dr. Polczinkski's opinion did not include moderate limitations in concentration, persistence, or pace: "*[I]n contrast with* Dr. Polczinski's opinion, the undersigned finds that the claimant had moderate limitations for the areas of … maintaining concentration, persistence or pace." (Tr. 27 (emphasis added).) Thus, if the ALJ was, as the Commissioner argues, tracking Dr. Polczinski's opinion by limiting Dehaan to simple, routine tasks, that limitation did not incorporate limitations in concentration, persistence, or pace.

As to state-agency psychologists Drs. Biscardi and Snyder, they both opined in the narrative portion of their respective Mental Residual Function Capacity

8

Assessments (MRFCA) that Dehaan "retains the capacity to understand, remember, carry out and sustain performance of 1-3 step tasks (but would become overwhelmed if the procedures were more complicated), complete a normal workday, interact briefly/superficially with coworkers/supervisors and adapt to changes/stressors associated with simple routine competitive work activities." (Tr. 28, 182, 204.) The ALJ gave their opinions great weight. (ECF No. 17 at 5-6.)

There are two problems with the Commissioner's reliance on the opinions of Drs. Biscardi and Snyder. First, although both found Dehaan was moderately limited in (1) "[t]he ability to carry out detailed instructions," (2) "[t]he ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and (3) "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a constant pace without an unreasonable number and length of rest periods[,]" (Tr. 181, 203), the narrative portion of their respective MRVCAs failed to include these limitations. (Tr. 182, 204.) The ALJ should have included these limitations in his RFC and in the hypothetical question posed to the vocational expert. *See Varga*, 794 F.3d at 816 ("Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored.").

Further, the ALJ recognized that, in contrast to the opinions of Drs. Biscardi and Snyder, "the evidence showed that the claimant also had a severe impairment

9

consisting of an anxiety disorder." (Tr. 28.) The opinions of Drs. Biscardi and Snyder did not include any of the additional limitations that might come from Dehaan's severe anxiety disorder.

The ALJ limiting Dehaan to making "simple work-related decisions" relates to the level of judgment Dehaan is limited to—not to limitations in her concentration, persistence or pace. (Tr. 20 ("With regard to the use of judgment, she could only make simple work-related decisions.").) The ALJ's restriction to limited interaction with supervisors, coworkers, and the public, as well as the restriction to only occasional changes in a routine work setting, deal largely with workplace adaptation rather than concentration, persistence, or pace. *See Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015) ("'Few if any work place changes' with limited 'interaction with coworkers or supervisors' deals largely with workplace adaptation, rather than concentration, pace, or persistence."). And the restriction that Dehaan would be off-task up to 10 percent of the workday, in addition to normal breaks, was intended to be a physical limitation, not a mental one. (*See* Tr. 24 (accepting Dr. Eric Lindford's physical assessment opinion to reduce Dehaan to sedentary work with "occasional breaks").) Thus, it appears that the ALJ attempted to capture Dehaan's limitations in concentration, persistence, and pace by limiting her to simple, routine tasks.

The Seventh Circuit Court of Appeals has repeatedly held that limiting the claimant to simple, routine tasks does not adequately capture limitations in

10

concentration, persistence, and pace. *See Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *Varga*, 794 F.3d at 814; *Yurt*, 758 F.3d at 858-59; *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010); *Stewart*, 561 F.3d at 684-85; *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008). The court finds that the hypothetical question posed to the vocational expert did not address Dehaan's moderate limitations in concentration, persistence, or pace. As a result, the vocational expert's assessment of the jobs available to Dehaan necessarily is called into doubt, as is the ALJ's conclusion that Dehaan is not disabled under the Social Security Act. *Moreno*, 882 F.3d at 730. Remand is necessary so that the ALJ can incorporate Dehaan's moderate limitations in concentration, persistence, or pace in the hypothetical question posed to the vocational expert.

## II. Symptom Evaluation

Pursuant to SSR 16-3p, the ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3, at *2, *see also* 20 C.F.R. 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work related activities…." SSR 16-3p, at *2.

The court reviews an ALJ's credibility finding deferentially, reversing only if it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). The critical question is whether the ALJ provided reasons based on the record before him to support his conclusion. *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). An ALJ is not required to "specify which statements were not credible." *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012); *see also Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992) (noting that an ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability").

The ALJ found that Dehaan's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 21.) However, he found that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the evidence." (*Id.*)

Dehaan first notes that the ALJ improperly counted her poor work history against her without inquiring as to why she had a poor work history. (ECF No. 13 at 18.) The ALJ wrote,

> The claimant was 45 years old at the time of the hearing. She lived with her parents and 15-year-old son. She was going through a divorce. She had a high school education. She had a poor work history with incomes above the substantial gainful activity level during only two years within the last 15 years (Ex. B6D).

(Tr. 21.) Contrary to Dehaan's assertion, this paragraph of the ALJ's opinion is simply

background that provides context. The ALJ did not count Dehaan's poor work history against her.

Dehaan argues that the ALJ "cherry-picked the record" with regard to his findings concerning the severity of Dehaan's knee problems resulting from her Ehlers-Danlos syndrome and back pain. (ECF No. 13 at 18-24.) Concerning her knee problems, the ALJ concluded,

> While the claimant had abnormalities associated with Ehlers-Danlos syndrome, she usually exhibited some good function upon examination including no laxity in the lateral collateral ligament or medical collateral ligament of the knee, normal patellar mobility, and good stability and range of motion (Ex. B15F/10, B18F/1). Further, the progress notes indicated that her symptoms improved with medication and the use of a knee brace (Ex. B15/1, B18F/1). It was not recommended that the claimant obtain more aggressive treatment for this condition, such as an operation (Ex. B18F/4).

(Tr. 23.) As a result, the ALJ did not find credible Dehaan's testimony that her knee problems were work preclusive (Tr. 57.)

The ALJ's conclusion is supported by the medical evidence in the record. (*See* Tr. 560, 562, 622, 661.) Additionally, Dehaan testified at the July 2016 hearing that the knee brace she was prescribed keeps her knee from dislocating. (Tr. 58.) Substantial evidence supports the ALJ's conclusion that Dehaan's knee issues resulting from her Ehlers-Danlos syndrome do not limit her ability to perform work related activities beyond the ALJ's RFC limitations.

With regard to Dehaan's back pain, which is complicated by her Ehlers-Danlos syndrome, the ALJ concluded that "physical examinations throughout the record indicated that she had some good function including a normal range of motion, good strength in the lower extremities, normal muscle tone, negative straight leg raise tests, intact sensation, and a normal gait[.]" (Tr. 22.) In so concluding, however, the ALJ overlooked numerous medical records noting limited and painful lumbar range of motion (Tr. 525, 638, 703, 735, 745, 757, 792, 818, 838), slow gait (Tr. 526, 757, 838), and positive straight leg raise tests (Tr. 511, 526).

The ALJ also concluded that Dehaan's "degenerative disc disease was treated with fairly conservative measures after the amended alleged onset date[.]" (Tr. 22.) In reaching that conclusion, he overlooked the fact that Dehaan had already had a multi-level fusion and further surgery was not an option. (Tr. 816 ("She had seen her neurosurgeon within the last year, and he recognized that she had significant disease but unfortunately, she is not a candidate for further surgery.").) Additionally, after Dehaan's second multi-level fusion, she continued to require a significant amount of pain medication. (*See, e.g.*, Tr. 816 ("She takes quite a bit of medicine for constant pain including gabapentin, cyclobenzaprine, and hydrocodone."); *see generally* Tr. 638-840.) The ALJ found that "the side effects [from the pain medication] only occurred occasionally and the medication allowed her to function better[.]" (Tr. 22.) That conclusion, however, overlooks Dehaan's constant complaints of pain and need for

more pain medication. (*See, e.g.*, Tr. 836.) In sum, the ALJ's conclusion regarding the intensity and persistence of Dehaan's back pain is not supported by the medical record.

Dehaan also argues that the ALJ's findings regarding her mental limitations are unsupported by substantial evidence. (ECF No. 13 at 24-25.) With regard to Dehaan's mental limitations, the ALJ concluded:

> Even though the claimant had depression and anxiety, the treatment records indicated that she usually exhibited good mental function upon examination including a normal mood, normal affect, normal behavior, and full orientation (Ex. B15F/12, B22F/29). While she exhibited some abnormalities during a psychological evaluation, she still exhibited good contact with her surroundings, she seemed pleasant and cooperative, she exhibited good eye contact and had a positive level of rapport, there was no evidence of psychomotor agitation or retardation, she was fully oriented, and she had a good fund of general information (Ex. B12F/5). Further, the treatment plan for her depression and anxiety was fairly conservative in nature. She did not require more aggressive treatment, such as inpatient care or hospitalizations.

(Tr. 23.) The medical record supports the ALJ's finding that, despite her depression and anxiety, Dehaan still exhibited good function at various appointments (Tr. 22; *see* Tr. 530-32, 663, 673, 681, 718, 778, 828, 954), and Dehaan does not cite any evidence in the record that is contrary to this finding (*see* ECF No. 13 at 25).

Therefore, on remand, the ALJ shall reevaluate the severity, persistence, and limiting effects of Dehaan's back pain in light of the record evidence, pursuant to the guidance provided by SSR 16-3p.

### III. Handling and Fingering

Dehaan first argues that the ALJ ignored her testimony that she has pain in her thumbs and failed to note that she had difficulty with handling and fingering because of her Ehlers-Danlos syndrome. (ECF No. 13 at 19.) To the contrary, the ALJ specifically concluded, "limitations regarding handling and fingering within the assigned residual functional capacity are supported by the claimant's testimony indicating that she experienced pain and dislocated her thumbs due to Ehlers-Danlos syndrome." (Tr. 25.)

Dehaan next argues that the ALJ "failed to articulate at all why Dehaan's condition was supportive of a finding that she could perform frequent[] handling and fingering as opposed to occasional handling and fingering." (ECF No. 13 at 26.) At the July 2016 hearing, the vocational expert testified that a limitation to occasional handling and fingering would be work preclusive. (Tr. 85.)

Contrary to Dehaan's argument, the ALJ did articulate why Dehaan's condition supported a finding that she could perform frequent handling and fingering. Drs. Bernard Stevens and Douglas Chang both found Dehaan did not have any manipulative limitations. (Tr. 179, 201.) In evaluating the opinions by Drs. Stevens and Chang, the ALJ concluded that additional evidence--namely, Dehaan's testimony--supported the limitation of frequent handling and fingering. (Tr. 25.) Further, Dr. Matthew Richlen, Dehaan's primary care physician, concluded that Dehaan could frequently handle and finger. (Tr. 25, 885.) Thus, substantial evidence in the record supports the ALJ's conclusion to limit Dehaan to frequent handling and fingering.

## IV. Medical Opinion Evidence

### A. Dr. Eric Linford's Opinion

Dr. Eric Linford, a consultative examiner, performed an orthopedic evaluation of Dehaan in August 2013. (Tr. 525-27.) At the conclusion of his report Dr. Linford recommended, "If employer was able to accommodate occasional breaks, she would tolerate office-type work." (Tr. 526.) Regarding Dr. Linford's recommendation, the ALJ wrote,

> While Dr. Linford did not explain what he thought constituted 'occasional' breaks, the assigned [RFC] generally corresponds with Dr. Linford's assessment by reducing the claimant to sedentary work with normal breaks (60 minutes per day) and the additional allowance to be off task less than ten percent of the workday."

(Tr. 24.)

Dehaan argues that "occasional for Social Security purposes is defined as up to 1/3 of the day," and submits "there is no logical connection between the term 'occasional[]' and the ALJ's conclusion that it would equate to normal work breaks." (ECF No. 13 at 27.) The Commissioner contends that Dr. Linford meant the ordinary definition of "occasional," meaning infrequent or irregular, not the social security definition. (ECF No. 17 at 6-7.)

A logical bridge exists between Dr. Linford's assessment that Dehaan would need occasional breaks and the ALJ's conclusion that that need is accounted for by limiting Dehaan to "normal breaks (60 minutes per day) and the additional allowance

17

to be off task less than ten percent of the workday." Absent any reason to believe that Dr. Linford was familiar with the specialized definition of "occasional" as used for social security purposes, it was logical and reasonable for the ALJ to conclude that Dr. Linford's reference to "occasional" breaks was intended to reflect the ordinary definition of "occasional"—that is, infrequent or irregular. As such, the court cannot say that the ALJ erred in his interpretation of Dr. Linford's opinion.

## B. Treating Source Opinions

Dehaan argues that the ALJ erred in evaluating and giving weight to the opinions of Drs. Richlen and Pulito by improperly applying the "Treating Physician Rule." (ECF No. 13 at 28-34.)

"Under 20 C.F.R. § 404.1527(c)(2), a treating source's opinion should receive controlling weight if it is well supported by medically acceptable clinical techniques and not inconsistent with other substantial evidence in the record." *Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" to determine how much weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)(citing 20 C.F.R. § 404.1527(c)(2)). "An ALJ must offer good

reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010)(internal quotations and citation omitted).

The ALJ assigned little weight to the opinions of Drs. Richlen and Pulito because they were internally inconsistent and inconsistent with the overall evidence in the record. The court finds the ALJ adequately considered the factors listed in 20 C.F.R. § 404.1527(c)(2), and gave good reasons supported by the record for discounting Dr. Richlen's and Dr. Pulito's opinions. Accordingly, the court rejects Dehaan's "treating physician rule" argument with regard to Drs. Richlen and Pulito.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and this matter is **remanded** for further proceedings consistent with this decision. The clerk of court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 13th day of August, 2018.

WILLIAM E. DUFFIN
U.S. Magistrate Judge